187 N.J. Super. 491 (1982)
455 A.2d 523
GABRIEL M. JULIANO AND LOIS A. JULIANO, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
PETER GASTON, INDIVIDUALLY AND T/A ARZONE CONSTRUCTION CO., DEFENDANT GASTON BUILDERS, INC., AND JOHN VAN HOOK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1982.
Decided December 29, 1982.
*492 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
William J. Pollinger argued the cause for appellants (DeLorenzo and Pollinger, attorneys).
David L. Rutherford argued the cause for respondent Gaston Builders, Inc. (Michael J. Mella, attorney).
*493 Richard A. Lustgarten filed a statement in lieu of brief on behalf of respondent John Van Hook (Goodman & Lustgarten, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
Plaintiffs Gabriel M. Juliano and Lois A. Juliano, his wife, appeal from a summary judgment dismissing their complaint by which they sought recovery for the property damages allegedly sustained by them as a result of the negligent workmanship of defendants Peter Gaston and John Hook. Defendants were two of the subcontractors who had done work on the new house which plaintiffs had purchased from the builder-vendor, C.A.P. Enterprises, who is not a party to this action. We reverse.
The record before us is sparse, consisting only of the pleadings, a notice of motion for summary judgment unaccompanied by affidavits or certifications, the order for summary judgment, and the transcript of the argument on the motion for summary judgment. If there was any discovery here, we have not been made privy to it. The reason for the inadequacy of the record appears in the introductory statement of the trial judge on the motion for summary judgment. He explained that when the matter had previously been reached for trial, it appeared to him that "the theory of privity of contract would exclude Juliano from the right to such recovery from the subcontractors." In order to avoid the expense of trial the judge then deemed it appropriate first to settle the basic liability question and therefore directed the parties to submit briefs thereon, treating the adjourned trial date as the return date of defendants' summary judgment motion. While the judge's comments on the motion argument refer to stipulated facts, we have not been favored with any such stipulation and are, therefore, forced to rely exclusively on the pleadings and representations made by counsel during the argument.
*494 Insofar as we can reconstruct from this wholly unsatisfactory record, the house in question was built during the year 1977 by C.A.P. Enterprises. In December 1977, when the house was all but completed, C.A.P. Enterprises contracted to sell it to plaintiffs, who took title early in January 1978. Defendant Gaston is alleged to have been the subcontractor, under an oral agreement with C.A.P. Enterprises, who executed the masonry, brick, plaster and waterproofing work. Although it appears that the bulk of his work was completed at least several months before plaintiffs' contract to purchase was executed, at least some additional water-proofing work was done late in 1977 and early in 1978. We do not, however, know whether any of that work was done after plaintiffs took title. It is further alleged that defendant Van Hook was the carpentry subcontractor who performed the framing work for the house. We do not know when this work was completed.
Plaintiffs generally allege that the work of both of these defendants "was done in negligent, unworkmanlike manner, contrary to the standards of the industry and in all respects carelessly and improperly." Plaintiffs further allege that "as the direct and proximate result thereof, plaintiffs' house requires extensive repairs and replacement and plaintiffs have and will be required to expend large sums of money therefor." We do not know, however, what the nature of the negligently performed and defective work was, in what way any defects manifested themselves, or precisely what damages actually flowed therefrom. We do, however, know that prior to the commencement of this action in April 1980 plaintiffs had instituted an action against C.A.P. Enterprises seeking recovery for these damages and complaining of the same negligent workmanship which constitutes the gravamen of this suit against the subcontractors.
We do not know if the action against C.A.P. Enterprises was predicated on a negligence theory, an express warranty, or an implied warranty of workmanship and habitability as articulated by McDonald v. Mianecki, 79 N.J. 275 (1979). In any event, *495 C.A.P. Enterprises defaulted in that action and plaintiffs submitted their proofs in support of a judgment by default. Although they asserted damages in the amount of $35,000, the same amount sought by the ad damnum clause of this complaint, the court entered judgment in the amount of $25,000. No part of the record of the action by plaintiffs against the C.A.P. Enterprises has been submitted to us. That judgment has not been paid nor is there any likelihood of its ever being paid since C.A.P. Enterprises itself is insolvent and its principal stockholder, who apparently was also a party to the action, has disappeared. Despairing, therefore, of recovery from the builder-vendor, plaintiffs commenced this action against the subcontractors on the theory that they were in any event the ultimately responsible parties.
As we have heretofore indicated, plaintiffs' theory of action against the subcontractors is in negligence. We fail, therefore, to understand the concern of the trial judge with the question of privity. Privity is a concept having relevance only in a contractual situation and is, of course, that concept which, as an historical matter and prior to the evolution of the doctrine of strict liability in tort, limited a consumer's warranty recourse to the party with whom he had directly dealt. The concept of privity would be relevant here only if the theory of plaintiffs' case were predicated on an attempt to extend the principle of McDonald v. Mianecki, supra. McDonald v. Mianecki held that as a matter of law the builder-vendor of a new house warrants to the purchaser thereof both workmanship and habitability. There is, of course, privity between the builder-vendor and the purchaser. The remedy of an implied warranty of workmanship and habitability running from a subcontractor directly to a purchaser with whom he has no contractual relationship would require the elimination of the privity prerequisite. We do not necessarily suggest that the viability of the privity requirement is any less vulnerable in this situation than it has proved to be in transactions involving the purchase of personal property. See Santor v. A & M Karagheusian, Inc., 44 N.J. 52 (1965). Indeed, *496 the demise of privity as a bar to a warranty action by the purchaser against a subcontractor may well be foreshadowed by the McDonald perception that new house purchasers are entitled to the same degree and panoply of protections as is a purchaser of chattels. The fact, however, remains that this action by these plaintiffs against these subcontractors was neither instituted nor prosecuted on an implied warranty theory but rather on a traditional negligence basis. Privity is hence irrelevant. See Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370 (Law Div. 1972). And see Restatement, Torts 2d (1965), § 324A at 142. We do not, therefore, address either a warranty or strict liability in tort cause of action here.
Considering the negligence theory on which this action is predicated, we first note that the historical bar to an action by the victim of defective workmanship related to real property had been founded upon the so-called "completed and accepted" rule, which relieved building contractors from continuing liability for defective workmanship after the owner's acceptance of the completed project. That rule, however, was repudiated by the New Jersey Supreme Court in Totten v. Gruzen, 52 N.J. 202 (1968), which held that builders and contractors, including subcontractors, could not "be relieved from liability merely because their work has been completed and accepted by the owner." 52 N.J. at 210. It is further significant to note that Totten v. Gruzen was a personal injury action against a subcontractor, among others, based not on a strict liability in tort theory but rather on more traditional allegations of negligence. We are further satisfied that the rationale of Totten v. Gruzen is fully applicable where, as here, the victim of the defective workmanship is the owner and the damages sustained by him are in the nature of property damages rather than personal injuries. Other jurisdictions have consistently so held, recognizing a direct cause of action in negligence, irrespective of the availability of a warranty or strict liability cause of action, where the purchaser of a new house seeks to recover property damages only from a negligent subcontractor. See, e.g., Stewart v. Cox, 55 Cal.2d *497 857, 13 Cal. Rptr. 521, 362 P.2d 345 (Sup.Ct. 1961); McDonough v. Whalen, 365 Mass. 506, 313 N.E.2d 435 (Sup.Jud.Ct. 1974); Kristek v. Catron, 7 Kan. App.2d 495, 644 P.2d 480 (Ct.App. 1982); Drexel Properties, Inc. v. Bay Colony, etc., 406 So.2d 515 (Fla.D. Ct.App. 1981).
In our view the basic legal problem in this case is whether plaintiffs' damages are recoverable in this negligence action. It appears to be defendants' contention that recoverable damages in a negligence action of this type are limited to personal injuries and consequential damage to property. In this context they distinguish damage to property in the consequential sense from the economic loss involved in merely replacing or repairing the defective work. They rely on Weedo v. Stone-E-Brick, Inc., 81 N.J. 233 (1979), which draws that distinction in the context of the contractor's comprehensive general liability policy. Weedo is not, in our view, here applicable. That decision does not address the remedy of the party injured by defective workmanship but only the customary allocation of risk between the insurer and the insured. Thus, as made clear by Weedo, ordinarily the builder-insured assumes the risk of necessary replacement or repair of faulty goods and workmanship but passes on to his insurer the risk of personal injury and consequential damage to property caused by the faulty workmanship. 81 N.J. at 239-240. The issue, therefore, addressed in Weedo is who, as between the builder and the insurer, pays for the faulty workmanship. The assumption of Weedo is that the builder will be liable in any case but will be entitled to indemnity from his carrier to the extent that the damage claim against him includes personal injuries or consequential damages. See, also, Hartford Ins. Group v. Marson Constr. Corp., 186 N.J. Super. 253 (App.Div. 1982) (1982).
It appears that the nature of the damages here may be limited to replacement and repair of defective workmanship, a category of damages customarily referred to as "economic loss" and that category of damages which, under the Weedo principle, is ordinarily *498 designated by the insurance scheme as the builder's rather than his carrier's risk. We see, however, no impediment, conceptual or practical, to the recovery of this category of damages in a negligence action by the purchaser against a subcontractor. As cogently articulated by the Indiana Supreme Court in Barnes v. Mac Brown and Co., Inc., 264 Ind. 227, 342 N.E.2d 619 (1976), a case recognizing the right of a subsequent home purchaser, in a negligence action, to seek economic loss damages from the original builder-vendor:
The contention that a distinction should be drawn between mere "economic loss" and personal injury is without merit. Why there should be a difference between an economic loss resulting from injury to property and an economic loss resulting from personal injury has not been revealed to us. When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury resulting from a defect in construction, the measure of damages is totally economic loss. We fail to see any rational reason for such a distinction.
If there is a defect in a stairway and the purchaser repairs the defect and suffers an economic loss, should he fail to recover because he did not wait until he or some member of his family fell down the stairs and broke his neck? Does the law penalize those who are alert and prevent injury? Should it not put those who prevent personal injury on the same level as those who fail to anticipate it? [342 N.E.2d at 621]
And see, also, Stewart v. Cox, Drexel Properties, Inc. v. Bay Colony, etc., and Kristek v. Catron, all supra. In our view, if plaintiffs sustained any economic loss by reason of the negligence of the subcontractors, they are entitled to be made whole.
Having confirmed the right of plaintiffs to proceed with their negligence claim, we do not address their unpleaded theory of third-party beneficiary, which in any event appears to be without substantial merit in these circumstances. See Gold Mills, Inc. v. Orbit Processing Corp., supra. We further find no merit in defendants' contention that by reason of the outstanding judgment against C.A.P. Enterprises, this action is barred by the entire controversy doctrine. See Cartel Capitol Corp. v. Fireco of New Jersey, 81 N.J. 548, 559 (1980); Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 559-560 (1981); McFadden v. Turner, 159 N.J. Super. 360, 369-370 (App.Div. 1978).
*499 The summary judgment appealed from is reversed and the matter is remanded for trial.