203 N.J. Super. 486 (1985)
497 A.2d 534
NEW MEA CONSTRUCTION CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, AND MARJORIE ASHWORTH, PLAINTIFFS-RESPONDENTS,
v.
WILLIAM J. HARPER AND HELENE A. HARPER, HIS WIFE, DEFENDANTS-COUNTERCLAIMANTS, APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1985.
Decided August 6, 1985.
*488 Before Judges KING, DEIGHAN and BILDER.
Michael S. Schottland argued the cause for appellants (Chamlin, Schottland, Rosen, Cavanagh & Uliano, attorneys; Margaret L. Algarotti, on the brief).
Stephan B. Kotzas argued the cause for respondents (Paschon, Feurey & Kotzas, attorneys; Garrett L. Joest, III, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
*489 This action arose from a dispute between a builder and homeowners regarding the construction of a single-family dwelling on the homeowner's lot for $97,000 plus extras. The plaintiff builder brought a suit in June 1982 demanding damages for the balance of the contract payments. Defendants answered in July 1982 denying liability under the contract. Defendants subsequently filed a counterclaim and then an amended counterclaim, four counts in all, in which they made these claims: (1) reimbursement for overcharges for extras in the amount of $15,261.70, (2) damages for abandoning construction and breaching the contract, (3) damages for negligent and careless workmanship, and (4) treble damages and counsel fees under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.
The case was tried for 12 days before Judge Fundler without a jury. The judge dismissed the plaintiffs' claim. The judge awarded damages of $29,154 on Count Three of the Counterclaim  on the theory of faulty construction and workmanship. He resolved the claims under Count One of the Counterclaim against the defendant because the dispute about the alleged overcharges for extras had been resolved through either private agreement by the parties or arbitration by the architect, Feltz. He resolved the claim under Count Two of the Counterclaim in favor of plaintiff because the amount allegedly due on the contract price was a "wash" and an offset when compared to the cost to defendants to finish the construction of the house after the contract was abandoned by the plaintiff. He resolved the claims under the Consumer Fraud Act against the defendants, finding the Act inapplicable in the circumstance of home construction.
The defendants-counterclaimants Harpers raise three points on this appeal. They claim that (1) the judge improperly handled the arbitration issue relating to extras, (2) personal liability should attach to plaintiffs' principal, Marjorie Ashworth, because her negligent conduct led to defendants' damages, *490 and (3) plaintiffs should be liable under the Consumer Fraud Act.
The contract price was $97,000 plus approved extras. Defendants' architect, Carl Feltz, prepared the plans and specifications. Payment was on the basis of a production schedule: 20% deposit on signing the agreement; 30% due on completion of the foundation and framing; 25% due on completion of the roof, siding, and rough electrical and plumbing work, 20% due upon the installation of the cabinets, sheetrock, furnace and other finishing items; and the final 5% payment due upon completion of the painting and installation of fixtures. Construction began in August or September 1981 and continued until May 4, 1982. The deposit and the first two payments (a total of 75%) had been paid in addition to payments for extras totalling $67,307.70. In May 1982 plaintiff claimed payment due for the next 20% plus $11,454.16 in additional extras, a total of $30,859.16. Jack Polloway, the attorney for Ashworth, demanded this payment in writing and threatened to halt the work if denied.

I
Judge Fundler found that the parties agreed to arbitrate the amount due for extras. The parties do dispute the scope of the arbitration agreement. Feltz found that defendants had been overcharged and that $52,046 was the justifiable amount for the $67,307.70 billed for extras. This apparently did not include the additional $11,459.16 demanded at the completion of the third stage of construction. Judge Fundler disallowed the builder's claim for this additional amount because it was not supported by a signed agreement between the parties as required by paragraph five of the contract.
As to the $67,307.70 sum for extras already paid the judge noted that each item was supported by a signed writing between the parties which specified the nature of the extra and the cost. He then determined as a fact that the scope of Feltz' arbitration undertaking did not extend to the $67,307.70 already *491 paid for extras but only to the third stage of the work and the claim made in May for $11,459.16 in extras. We affirm Judge Fundler's decision on this point for the reasons given at pages 22 to 26 and pages 39 to 40 of his 50-page oral opinion of March 30, 1984. He reached the factual conclusion that the architect was only authorized to reach a decision concerning the reasonableness of the additional charge of $11,459.16 for extras completed in the third stage, not the previous charges already made and paid for by defendants. Since this factual view of the record is reasonably supported by the evidence, we must accept it. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974); State v. Johnson, 42 N.J. 146, 161-162 (1964).
The correspondence which precipitated the controversy over the arbitration dealt only with the question of payment of the third installment and the billing for $11,459.16 in extras. No mention was made therein of the previously paid $67,307.70. Moreover, the testimony of Polloway regarding the events of the arbitrator's inspection of May 18, 1982 supports the judge's finding on this issue. The judge found: "As to change and price, the Court is not going to rewrite the agreement on extras that the parties have already executed and alter the agreement already made pursuant to paragraph five of the contract. Having done so, the defendants have paid for these extras. If they have been so overcharged, that is their problem. The Court cannot protect fools."

II
The next question is whether personal liability may attach to plaintiff, New Mea Construction Company's principal, Ashworth. The Third Count of the counterclaim rested on a theory of negligence. It specifically alleged
* * * * * * * *
2. The General Contractor performed much of its work in a careless and negligent manner, causing severe damage to the premises. Among other results, was a partial collapse of the roof of the Harpers' dwelling, which *492 incident is referenced in this counterclaim for purposes of example only, and not by way of limitation to their problems.
3. As a result of the careless and negligent workmanship on part of the General Contractor, and substantially failing to meet the proper standards of the contracting profession, the Harpers have sustained severe monetary losses in seeking to repair the deficiencies.
Ashworth was not named in the complaint. Only New Mea Construction was a plaintiff. She was named as a defendant to the initial counterclaim but on Counts Two and Three judgment was only demanded against New Mea Construction. Judgment was demanded against both Ashworth and New Mea jointly and severally on Count One, which challenged the overpayment by defendants for extras. The amended answer and counterclaim incorporated the first three counts by reference and added a fourth count against both New Mea Construction and Ashworth under the Consumer Fraud Act. The judgment of $29,154 was entered against New Mea Construction on the Third Count and a judgment of no cause for action was entered in favor of Ashworth as to the entire claim. Shortly after judgment defendant moved to add the individual plaintiff, Ashworth "as defendant on the second and third counts of the counterclaim." As we construe the record, this was the first effort to make Ashworth a defendant as to those counts of the counterclaim which alleged claims for failure to complete the contract and for negligent workmanship.
A motion for leave to amend to conform to the evidence is generally to be liberally construed. R. 4:9-2. It is nonetheless a matter left to the trial judge's sound discretion in the interests of justice. In the present case, defendants had numerous opportunities to amend the negligence and breach of contract counts to specifically include Ashworth, either when granted leave to file the amended counterclaim or during the twelve days of actual trial. Although defendants' motion to amend was properly denied by the trial judge as a matter of discretion, there are sound substantive grounds as well for rejecting defendants' tort claim under count three against Ashworth.
*493 The boundary line between tort and contract actions is not capable of clear demarcation. The recently-published Prosser and Keeton, Law of Torts, § 92 at 655 (1984), remarks that
The distinction between tort and contract liability, as between parties to a contract, has become an increasingly difficult distinction to make. It would not be possible to reconcile the results of all cases. The availability of both kinds of liability for precisely the same kind of harm has brought about confusion and unnecessary complexity. It is to be hoped that eventually the availability of both theories  tort and contract  for the same kind of loss with different requirements both for the claimant's prima facie case and the defendant's affirmative defenses will be reduced in order to simplify the law and reduce the costs of litigation.
Tort obligations are in general obligations that are imposed by law  apart from and independent of promises made and therefore apart from the manifested intention of the parties  to avoid injury to others. By injury here is meant simply the interference with the individual's interest or an interest of some other legal entity that is deemed worth of legal protection. The variety of interests that are protected through tort law in one way or another are divisible into three general categories: (1) interests of personality; (2) interests in tangible things, real and personal; and (3) a large body of intangible interests, both economic and relational. There are three considerations of utmost importance in deciding about duties, i.e., tort obligations, apart from manifested intentions through promises made.
These considerations are: (1) the nature of the defendant's activity such as a builder or a manufacturer-seller of a product; (2) the relationship between the parties, such as occupier of land and business guest; and (3) the type of injury or harm threatened. The obligations which give rise to tort actions and which are imposed on the basis of the three factors just mentioned are created primarily on the basis of policy reasons of one kind or another apart from enforcing a commitment of an intention to do or not to do something in the future. These obligations, commonly referred to as duties, are often owed to all those within the range of harm or at least to some considerable class of people that can include parties to a contract. [Id. at 656-658].
Prosser and Keeton suggests that the distinction between tort and contract cases frequently follow seven generalizations which assist in resolving some of the existing complexities relating to categorization of cases. These are
(1) Obligations imposed by law are tort obligations,
(2) Tort obligations may not be disclaimable,
(3) Misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things
(4) Recovery of intangible economic loss is generally determined by contract,

*494 (5) There is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made,
(6) Duties of affirmative action are often imposed by law apart from the promises made,
(7) Damages for a loss suffered by a promisee in reliance on a promisor to carry out a promise may be recoverable on a tort negligence theory.
Although this set of generalizations does not provide a definitive answer for resolution of the categorization of this action, they provide some guidance.
The crux of defendants' counterclaim for negligence is that plaintiff Ashworth negligently supervised the construction of the premises. Defendants are apparently claiming that Ashworth's "negligent supervision" included use of materials that were not of the quality mandated by the contract's terms and other unnecessary work. For instance, defendants claim that the flooring and framing were done with lesser quality material than specified in the contract. Looking to Prosser and Keeton's standards, this cause sounds basically in contract. The obligation to use the material specified in the contract rather than some lesser-grade material was clearly not an obligation imposed by law. Merely nominally casting this cause of action as one for negligent supervision does not alter its nature. Moreover, the obligation to use specified material could have been altered by an amendment to the contract. Also, the injury suffered in this case is the type not ordinarily alleged in a tort case. Here there was no personal injury or consequential property damage arising from a traumatic event. Rather the loss is of a nature more normally associated with a contract action. Given these factors and the understanding that the relationship between the parties is governed by a lengthy and comprehensive contractual arrangement, defendants' counterclaim is more soundly based on contract than on tort.
Defendant contends that Juliano v. Gaston, 187 N.J. Super. 491 (App.Div. 1982), holds otherwise. Cases such as this however are fact sensitive and the present case rests on different factual underpinnings than Gaston. Although the Gaston *495 record was not well developed, the claim by plaintiff in that case was that certain "masonry, brick, plastic, and waterproofing work" was negligently performed. Plaintiff there was a subsequent purchaser of the house and ostensibly was precluded from proceeding against the contractor on contract grounds because of lack of privity. The Gaston court found that, despite the fact that no personal injury or property damage had been sustained, plaintiff was entitled to proceed with a negligence action. The court noted
In our view the basic legal problem in this case is whether plaintiffs' damages are recoverable in this negligence action. It appears to be defendants' contention that recoverable damages in a negligence action of this type are limited to personal injuries and consequential damage to property. In this context they distinguish damage to property in the consequential sense from the economic loss involved in merely replacing or repairing the defective work. They rely on Weedo v. Stone-E-Brick, Inc., 81 N.J. 233 (1979), which draws that distinction in the context of the contractor's comprehensive general liability policy. Weedo is not, in our view, here applicable. That decision does not address the remedy of the party injured by defective workmanship but only the customary allocation of risk between the insurer and the insured. Thus, as made clear by Weedo, ordinarily the builder-insured assumes the risk of necessary replacement or repair of faulty goods and workmanship but passes on to his insurer the risk of personal injury and consequential damage to property caused by the faulty workmanship. 81 N.J. at 239-240. The issue, therefore, addressed in Weedo is who, as between the builder and the insurer, pays for the faulty workmanship. The assumption of Weedo is that the builder will be liable in any case but will be entitled to indemnity from his carrier to the extent that the damage claim against him includes personal injuries or consequential damages. See also Hartford Ins. Group v. Marson Constr. Corp, 186 N.J. Super. 253 (App.Div. 1982).
It appears that the nature of the damages here may be limited to replacement and repair of defective workmanship, a category of damages customarily referred to as "economic loss" and that category of damages which, under the Weedo principle, is ordinarily designated by the insurance scheme as the builder's rather than his carrier's risk. We see, however, no impediment, conceptual or practical, to the recovery of this category of damages in a negligence action by the purchaser against a subcontractor. As cogently articulated by the Indiana Supreme Court in Barnes v. Mac Brown and Co., Inc., 264 Ind. 227, 342 N.E.2d 619 (1976), a case recognizing the right of a subsequent home purchaser, in a negligence action, to seek economic loss damages from the original builder-vendor:
The contention that a distinction should be drawn between mere "economic loss" and personal injury is without merit. Why there should be a difference between an economic loss resulting from injury to property and an economic *496 loss resulting from personal injury has not been revealed to us. When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury resulting from a defect in construction, the measure of damages is totally economic loss. We fail to see any rational reason for such a distinction.
If there is a defect in a stairway and the purchaser repairs the defect and suffer an economic loss, should he fail to recover because he did not wait until he or some member of his family fell down the stairs and broke his neck? Does the law penalize those who are alert and prevent injury? Should it not put those who prevent personal injury on the same level as those who fail to anticipate it? [342 N.E.2d at 621].
And see, also Stewart v. Cox, Drexel Properties, Inc. v. Bay Colony, etc. [406 So.2d 515 (Fla.D.Ct.App. 1981)] and Kristek v. Catron, [7 Kan. App.2d 495, 644 P.2d 480 (Ct.App. 1982)], all supra. In our view, if plaintiffs sustained any economic loss by reason of the negligence of the subcontractors, they are entitled to be made whole.
It is not necessary to disagree with the holding in Gaston to reach a different result here. In Gaston, there appears to have been active negligence on the part of the subcontractor which harmed persons not parties to the original contract. Here, the prime allegation of negligence appears to relate to the plaintiff-contractor's failure to supervise in a manner that would assure compliance with the contract terms, agreed upon in writing between the parties. Moreover, as far as we can tell, the damages sought in Juliano v. Gaston were typical contract damages. See 187 N.J. Super. at 494. There is no need here to invent an independent tort cause of action against Ashworth in order to permit the owners to recover against the defaulting promisor contractor.
In Aronsohn v. Mandara, 98 N.J. 92 (1984), the Supreme Court recently was confronted with a claim similar to that before us. Plaintiff in that action, a subsequent purchaser of a house, brought a claim for damages for negligence in the construction of a patio. Because the Court found that plaintiff was the assignee of the previous owner's contractual rights under the patio construction contract, it did not directly confront the negligence cause. The Court noted with regard to a possible negligence claim that
... a contractor may be liable to third persons who suffer personal injury and property damages as a proximate result of a contractor's negligent workmanship after he has competed the job.

*497 However, what is involved here is essentially a commercial transaction, and plaintiffs' claim is rested on the violation of the implied contractual provision that the patio would be constructed in a workmanlike fashion. We do not intend to exclude the possibility that a cause of action in negligence would be maintainable. See Rosenau v. City of New Brunswick, 51 N.J. 130 (1968) (holding valid a negligence suit in which a consumer of water supplied by the city sued the manufacturer of a defective meter which allegedly caused water damage to the meter as well as to his home). However, we do not need to decide the validity of plaintiff's negligence claim, since, as discussed above, the contractor's negligence would constitute a breach of the contractor's implied promise to construct the patio in a workmanlike manner.
We, like the Court in Aronsohn, may not wish to preclude the possibility of a tort claim where consequential damages result from careless workmanship. But that is not the case before us. In this case the claim was premised on a contract. Moreover, the creation of a new theory of action is best left to the Supreme Court. See Coyle v. Englander's, 199 N.J. Super. 212, 226 (App.Div. 1985).
In conclusion, we also agree with the judge's ruling at the end of the case and again on the post-judgment motion that there should be no personal liability on Ashworth for the breach of contract claim. At the end of his 50-page oral decision the judge said:
Any claim against the individual plaintiff, Ashworth, is stricken. The Court can find no basis for any personal liability with respect to her in this action. Although she was the principal and guiding force of the plaintiff, the defendant at all times knew that they were dealing with a corporate entity and that the plaintiff was acting for and on behalf of the corporate entity and that there is no basis in this case for the Court to pierce the corporate veil, nor has there been any claim or piercing of corporate veil in this matter.
Again, on the post-judgment motion he said
The defendants knew that they were dealing with a corporation, albeit Ms. Ashworth being the principal, and if anybody is responsible to anyone she may be responsible to the corporation. There might be a cause of action there. But I found no personal responsibility under the law as to her.
We agree.

III
The final question is whether this counterclaim may be maintained against the custom builder New Mea Construction Corporation *498 and Ashworth, its principal, under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. In 1981 plaintiff New Mea Construction Corporation agreed in writing to build a single-family home on defendants' property pursuant to plans and specifications drawn by the defendants-owners' architect, Feltz. The Law Division judge found "that New Mea Construction Corporation agreed in that contract to build a one-family residence for the defendants in accordance with the plans in good and workmanlike manner [and] that the plaintiff shall and will find and provide such good, proper, and sufficient materials of all kind and [if these materials] were not available [the plaintiff was] to make substitutions after conference with the owners." The contractor was to provide all labor and materials.
As we previously held in Parts I and II of this opinion, the Law Division judge properly awarded damages against the plaintiffs and in favor of the defendants on Count Three of the counterclaim in the sum of $29,460 because of "negligent and careless workmanship" in the work actually performed by the contractor, New Mea Construction.
Defendants had claimed in Count Four of the counterclaim that the poor workmanship entitled them to treble damages plus attorneys' fees under the Consumer Fraud Act, specifically N.J.S.A. 56:8-1 et seq. In the fourth count of the counterclaim defendants alleged that ungraded Hem-Fir (hemlock) was used in the framing, contrary to the specifications which called for "Graded # 1 Douglas Fir." Defendants alleged that this substitution of inferior quality lumber "represented a deceptive, unconscionable and fraudulent practice" in violation of N.J.S.A. 56:8-2.
After reaching the verdict for the plaintiff on Count Three of the counterclaim for $29,460 the judge turned to the claim for consumer fraud. He said "in regard to defendants' claim that plaintiff[s are] in violation of the Consumer Fraud Act, the Court has had a great deal of difficulty in determining that that act is applicable to this case." The judge then held

*499 This is a contract action, which there is a written contract existing between the parties in question. The parties have been represented by counsel. The Court considers that this matter should be decided on contract law and that the Consumer Fraud Act is not applicable to a matter of this nature and, therefore, declines to award any damages based thereon, including any treble damages, any counsel fees, other than the costs that may be awarded to the defendants on the counterclaim by virtue of this determination.
Defendants base their counterclaim on N.J.S.A. 56:8-2 which provides in full
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.[1]
We think the key words for construction are "in connection with the sale ... of any merchandise ..., or with the subsequent performance of such person...." The definitional sections are very broad. The term "merchandise" as used in the Act includes "any objects, wares, goods, commodities, services or anything offered directly or indirectly, to the public for sale." N.J.S.A. 56:8-1(c). "Sale" includes "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." N.J.S.A. 56:8-1(e).
*500 Defendants-appellants contend for a broad construction of the statute. Appellants argue that the principle consumer fraud or deception was the substitution of substandard lumber, a lesser grade than prescribed by the written contract. Appellants contend that any use of substandard materials by a builder fits the definitional language of N.J.S.A. 56:8-2 because it was an "unconscionable commercial practice, deception, fraud, false promise, misrepresentation or the knowing concealment, suppression or omission of any material fact" with intent to generate reliance. Appellants point out that the materials were, in effect, sold by the contractor to the owners. Indeed, under paragraph 14 of the contract the materials remained the property of the contractor "until the final payment has been made." Appellants urge that the ultimate incorporation of the substandard materials as an improvement to realty upon completion of the contract is not a good reason to bar a recovery for a clear-cut consumer fraud.[2]
True, there is no case applying the Consumer Fraud Act to construction of a custom built house. Our Supreme Court has observed broadly that the "Act, originally enacted in 1960, is aimed basically at unlawful sales and advertising practices designed to induce customers to purchase merchandise or real estate." Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 270 (1978); Fenwick v. Kay American Jeep, Inc., 72 N.J. 372, 377 (1977). We have declared that the Consumer Fraud Act "should be construed liberally in favor of protecting consumers," Levin v. Lewis, 179 N.J.Super 193, 200 (App.Div. 1981), and have spoken of the "perceived need to liberally construe the act in favor of protecting consumers." State v. Hudson Furniture Company, 165 N.J. Super. 516, 520 (App.Div. 1979). "The act is broadly designed to protect the public." Skeer v. EMK Motors, Inc., 187 N.J. Super. 465, 470 (App.Div. 1982). *501 Our Supreme Court has also observed in respect of the responsibility of a custom builder: "That a consumer purchases from a `small scale' builder-vendor does not alter the fact that to him this transaction is one of, if not the, major investment of his lifetime and hence worthy of great protection." McDonald v. Mianecki, 79 N.J. 275, 194 (1979). We also note here that the Act relates not only to any unconscionable practices relating to the initial sale or advertisement but also to "the subsequent performance." N.J.S.A. 56:8-2.
The findings of the trial judge suggest that this is the type of shoddy performance which the Consumer Fraud Act intended to discourage. He found "that the plaintiff shortchanged the defendants in the construction of this house." He said that "the plaintiff took complete advantage of the defendant in regard to its performance of the contract obligations." In performing the flooring construction the plaintiff "shortchanged the homeowner" and showed "callous indifference to the interest of defendant homeowner." He found the blatant substitution of substandard lumber for framing "abominable." He stated that "the omissions and deviations ... were occasioned by bad faith" and that there "was a conscious decision to substitute different flooring." He concluded his findings by stating
The defendants at no time ever refused to pay for anything that might have been more expensive than something else. But it seems that every turn of the event, the plaintiff attempted to shortchange the property owner by substituting cheaper materials, as opposed to the more expensive materials in defiance of the desires of the homeowner to have a house constructed of the best quality and of the best workmanlike manner. I cannot emphasize more, that right from the beginning the manner in which the plaintiff callously treated the interest of the defendant in the construction of his home, that the plaintiff has breached the contract with the defendant on many ways and on many occasions.
Against the background of these findings, we conclude that the Consumer Fraud Act is applicable to a custom builder who uses substandard material in the construction of a house. We find that the material used in the house was "merchandise sold" to the owners within the contemplation of N.J.S.A. 56:8-1(c) and (e). The available legislative history demonstrates that *502 the act was intended to be "one of the strongest consumer protection laws in the nation." See Skeer v. EMK Motors, Inc., 187 N.J. Super. 471-473. We deem it our responsibility to construe the Act broadly, not in a crabbed fashion which would provide an exemption for a custom builder, an exemption we do not think the legislature ever intended to bestow.[3] Statutory exceptions "are not to be implied." 2A Sutherland, Statutory Construction, § 47.11 at 145 (1984); Com. v. Germano, 379 Mass. 268, 397 N.E.2d 663 (1979); State v. Magliano, 7 Md. App. 286, 255 A.2d 470, 476 (Ct.Spec.App. 1969).
We reverse and remand to the Law Division for further proceeding in view of our conclusion that the Consumer Fraud Act applies to a builder of a single-family home who uses substandard materials in violation of a contract. We would expect the Law Division judge to review the record and his findings and if satisfied that defendants are otherwise liable under the Act, to award the appropriate measure of damages under N.J.S.A. 56:8-19 which says
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit. [Emphasis added].
The judge should also assess damages against plaintiffs' principal Ashworth, who was a defendant as to the Consumer Fraud Act Count, if he finds from a review of the record and his findings that she meets the test for liability under that Act. See N.J.S.A. 56:8-1(d) (definition of "person"); Hyland v. *503 Aquarian Age 2,000 Inc., 148 N.J. Super. 186, 193 (Ch.Div. 1977); Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 253-256 (Ch.Div. 1972).
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] No claim has been asserted under the "New Home Warranty and Builders' Registration Act." N.J.S.A. 46:3B-1 et seq., L. 1977, c. 467, § 1; see Timpone and O'Flanagan, "Home Owner Warranties in New Jersey," 3 Seton Hall Leg.J. 203 (1978). That act specifically preserves to the owner any other available remedies. N.J.S.A. 46:3B-9. In the face of this reservation of remedies we will not construe the statutory warranty remedy as in any sense exclusive and a bar to a claim under the Consumer Fraud Act. See McDonald v. Mianecki, 79 N.J. 275, 287 (1979).
[2] The owners allege specific statutory violations. See N.J.S.A. 51:4-27 (grading, measuring and labeling lumber); N.J.S.A. 51:4-28 (delivery ticket for building materials).
[3] The Act was amended effective January 19, 1976 to include the sale or advertisement of real estate. See Neveroski v. Blair, 141 N.J. Super. 365, 377 (App.Div. 1976). If the plaintiffs had built the house on speculation rather than under contract and sold it to defendants under a misrepresentation, the Act would apply to them.