**YACHT CLUB II HOMEOWNERS ASSOCIATION, INC., Plaintiff-Appellant,**

v.

**A.C. EXCAVATING; Brady Son Bonded Roof Co.; Dirt–N–All Excavating; NDF Company; Formex Concrete Forming, Inc.; Frank's Finish Grading, Inc.; Hesterly Holland Construction, LLC; K.J. Woodworks, Ltd.; Rocky Mountain Flatwork, Inc.; Stevens Excavating, Inc.; Watren Concrete Forming, Inc.; and Yeager Concrete Corporation, Defendants–Appellees.**

No. 02CA0645.

Colorado Court of Appeals, Div. III.

Nov. 20, 2003.

Certiorari Granted July 26, 2004.

crete Forming, Inc., Frank's Finish Grading, Inc., Hesterly Holland Construction, LLC, and Watren Concrete Forming, Inc.

Markusson, Green & Jarvis, P.C., H. Keith Jarvis, David B. Bush, Denver, Colorado, for Defendant–Appellee Dirt–N–All Excavating.

Burg Simpson Eldredge Hersh & Jardine, P.C., Peter W. Burg, Kathy Hix, David K. Teselle, Englewood, Colorado, for Defendant–Appellee NDF Company.

Ray Lego & Associates, Janet S. Bouffard, Greenwood Village, Colorado, for Defendants–Appellees KJ Woodworks, Ltd. and Rocky Mountain Flatwork, Inc.

Fowler, Schimberg & Flanagan, P.C., Daniel M. Fowler, Steven W. Fox, Denver, Colorado, for Defendant–Appellee Stevens Excavating, Inc.

Hall & Evans, LLC, Bruce A. Menk, Denver, Colorado, for Defendant–Appellee Yeager Concrete Corporation.

Opinion by Judge DAILEY.

In this construction defects case, plaintiff, Yacht Club II Homeowners Association, Inc. (HOA), appeals the judgment entered in favor of defendants, A.C. Excavating; Brady & Sons Bonded Roof Co.; Dirt–N–All Excavating; NDF Company; Formex Concrete Forming, Inc.; Frank's Finish Grading, Inc.; Hesterly Holland Construction, LLC; K.J. Woodworks, Ltd.; Rocky Mountain Flatwork, Inc.; Stevens Excavating, Inc.; Watren Concrete Forming, Inc.; and Yeager Concrete Corporation (collectively, subcontractors). We reverse and remand for further proceedings.

The issues on appeal concern the HOA's right to pursue claims of negligence against subcontractors for the following problems encountered in the individual units and common areas of a townhome development: heaving basement floors, cracking concrete foundations and slabs, reverse sloping driveways, leaking windows and doors, slanted floors, damaged drywall, standing water in garages, movement of framing, water penetration of the roofs and underlying structures, water staining, wet insulation, decaying floor sheathing, and deteriorating external trim.

Holland & Hart, LLP, Joseph W. Halpern, Teresa D. Locke, Denver, Colorado; McKenzie Rhody & Hearn, LLC, T. Cass McKenzie, Michael A. Hearn, Andrew M. Karr, Denver, Colorado, for Plaintiff–Appellant.

Messner & Reeves, LLC, John K. Shunk, Denver, Colorado, for Defendant–Appellee A.C. Excavating.

Harris Karstaedt Jamison & Powers, A. Peter Gregory, James G. Gaspich, Englewood, Colorado, for Defendants–Appellees Brady & Son Bonded Roof Co., Formex Con-

Attributing these problems to various architectural, grading, drainage, structural, and concrete flatwork defects, as well as to improper installation of windows, doors, roof trusses, and shingles, the HOA instituted the present action against (1) the developer and general contractor for breach of implied warranty, breach of express warranty, violation of the Colorado Consumer Protection Act, and negligence; and (2) subcontractors for negligence.

The HOA settled with the developer, general contractor, and other subcontractors not parties to this appeal. As pertinent to the remaining subcontractors, the trial court granted a motion for partial summary judgment against the HOA, on the ground that it lacked standing to assert claims for damages to individually owned units. When the HOA requested reconsideration or, in the alternative, leave to amend to add individual unit owners as plaintiffs, the trial court denied the request as moot. The court relied on its interim partial summary judgment ruling that barred the HOA's negligence claims, even in relation to common areas, based on the economic loss rule, because the HOA was a third-party beneficiary of subcontractors' warranties to the general contractor.

Because negligence was the only claim the HOA alleged against the subcontractors, the trial court entered judgment in favor of the subcontractors.

## I.

The HOA contends that the trial court erred in concluding that it lacked standing to pursue claims for construction defects damage to individual townhome units. We agree.

Although the trial court determined that its standing ruling had become moot in light of its economic loss ruling, we choose to address the standing issue because of its jurisdictional nature. *See Ajay Sports, Inc. v. Casazza*, 1 P.3d 267, 272 (Colo.App.2000).

In *Villa Sierra Condominium Ass'n v. Field Corp.*, 787 P.2d 661, 667 (Colo.App. 1990), a division of this court indicated that a condominium association lacked standing to assert claims on behalf of condominium unit owners against a builder-vendor for damages to individual units caused by construction defects.

In 1991, the General Assembly enacted the Colorado Common Interest Ownership Act (CCIOA), § 38–33.3–101, et seq., C.R.S.2003. Under the CCIOA, a unit owners association is empowered, "subject to the provisions of [its] declaration," to "[i]nstitute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community." Section 38–33.3–302(1)(d), C.R.S.2003.

Here, the trial court determined that the HOA lacked standing to pursue damage claims on behalf of individual unit owners under *Villa Sierra*. Further, the court determined that the HOA could not assert standing under the CCIOA because the HOA's declaration excluded individual units from the common interest community.

On appeal, the subcontractors concede that the court erred in its construction of the HOA's declaration. Nonetheless, they contend that the CCIOA does not confer standing upon the HOA to raise damage claims related to individual units. Claims of that nature are not, they argue, "matters affecting the common interest community." In support of this argument, they direct our attention to differences in the association's and the unit owners' rights and obligations with respect to the "common elements" of, and the individual units in, a common interest community, as set out in § 38–33.3–307(1), C.R.S.2003 (except as otherwise provided in the declaration or by statute, "the association is responsible for maintenance, repair, and replacement of the common elements, and each unit owner is responsible for maintenance, repair, and replacement of such owner's unit"). We are not persuaded.

 The interpretation of a statute is a question of law. *See Ryals v. St. Mary–Corwin Reg'l Med. Ctr.*, 10 P.3d 654, 659 (Colo.2000). Our task in interpreting a statute is to give effect to legislative intent. *Preston v. Dupont*, 35 P.3d 433, 437 (Colo. 2001).

 We presume that, in enacting a statute, the legislature was aware of prior decisional law, *Colorado Springs Disposal v. Indus. Claim Appeals Office*, 58 P.3d 1061,

1063 (Colo.App.2002), and we accept the intent of the drafters of a uniform act as the General Assembly's intent when it adopts a uniform act. *See Copper Mountain, Inc. v. Poma of Am., Inc.,* 890 P.2d 100, 106 (Colo. 1995).

■ We construe words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, accordingly. *See* § 2–4–101, C.R.S. 2003; *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1219 (Colo.2002).

■ If the meaning of a statute is clear and unambiguous, we apply the statute as written. *See Slack v. Farmers Ins. Exchange,* 5 P.3d 280, 284 (Colo.2000).

Here, the General Assembly enacted the CCIOA in 1991, following the division's decision in *Villa Sierra.* Section 38–33.3–302(1)(d) was patterned after the Uniform Common Interest Ownership Act (UCIOA), § 3–102(d) (1982), whose purpose was to make "clear that the association can sue or defend suits even though the suit may involve only units as to which the association itself has no ownership interest." UCIOA § 3–102 cmt. 3, at 96; *see* Jerry C.M. Orten et al., *The Colorado Common Interest Ownership Act,* 21 Colo. Law. 645, 653 (Apr. 1992)(§ 38–33.3–302(1)(d) "follows the national trend acknowledging the representative capacity of the association and ends substantial difficulty on the standing issue in Colorado[,] ... enabl[ing] the association to represent more effectively its owners in such matters as construction defects, ... avoid[ing] the necessity of assignment of claims, powers of attorney or class actions in many circumstances, [and] thereby simplifying and making more practical the prompt action in the association's and owners' common interests").

By its terms, the plain language of § 38–33.3–302(1)(d) permits an association to bring an action not only on its own behalf but also on behalf of "two or more unit owners." The only limitation on an action on behalf of unit owners is that the matter be one "affecting the common interest community."

Under the CCIOA, individual units are a part of the "common interest community." *See* § 38–33.3–103(30), C.R.S.2003 (defining "unit" as "a physical portion of the common interest community which is designated for separate ownership or occupancy and the boundaries of which are described in or determined from the declaration").

■ Recognizing the underlying purpose of § 38–33.3–302(1)(d), giving the phrase "common interest community" the meaning ascribed to it by the CCIOA, and realizing that an exception should not be read into a statute that its plain language does not suggest, warrant, or mandate, *see Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo.2000), we conclude that § 38–33.3–302(1)(d) confers standing upon associations to pursue damage claims on behalf of two or more unit owners with respect to matters affecting their individual units. *See Sandy Creek Condo. Ass'n v. Stolt & Egner, Inc.,* 267 Ill.App.3d 291, 296, 204 Ill.Dec. 709, 642 N.E.2d 171, 176 (1994)(interpreting similar language; reaching same conclusion); *Milton Co. v. Council of Unit Owners,* 354 Md. 264, 277–78, 729 A.2d 981, 988–89 (1999)(same); *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.,* 668 P.2d 535, 539–40 (Utah 1983)(same).

Consequently, the trial court erred in ruling that the HOA lacked standing to assert damage claims for construction defects to numerous individual townhome units.

### II.

The HOA contends that the trial court erred in dismissing its negligence claim based on the economic loss rule. We agree.

We review de novo the trial court's summary judgment ruling. *See Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995).

■ "[The] economic loss rule prevents recovery for negligence when the duty breached is a contractual duty and the harm incurred is the result of failure of the purpose of the contract." *Jardel Enters., Inc. v. Triconsultants, Inc.,* 770 P.2d 1301, 1303 (Colo. App.1988).

In *Town of Alma v. Azco Construction, Inc.,* 10 P.3d 1256, 1259, 1262 (Colo.2000), the supreme court approved use of the economic

loss rule to maintain the boundary between tort and contract law. Tort law, the court pointed out, concerns obligations imposed by law, without regard to any agreement or contract, to protect citizens from the risk of physical harm to their persons or their property. Contract law, in contrast, concerns obligations arising from promises made between parties.

> Contract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining. Limiting tort liability when a contract exists between parties is appropriate because a product's potential nonperformance can be adequately addressed by rational economic actors bargaining at arms length to shape the terms of the contract.

*Town of Alma, supra,* 10 P.3d at 1262.

The key to the availability of a tort or contract action lies in the source of the duty that forms the basis of the action:

> [W]here we have recognized the existence of a duty *independent* of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.

*Town of Alma, supra,* 10 P.3d at 1263. Hence, we turn to the question whether subcontractors owe the HOA an independent tort duty.

█ The existence of a tort duty is a matter of law. "The determination that a duty does or does not exist is 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection.'" *Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 465 (Colo.2003)(quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 539 (5th ed.1984)).

In *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041, 1042–43 (Colo.1983), the supreme court held that, independent of any contractual duty, builder-vendors also have a general duty imposed by law to act without negligence in the construction of homes. *See also Cary v. United of Omaha Life Ins. Co., supra,* 68 P.3d at 466 n. 7 (noting that *Cos-mopolitan Homes* "determined that a homebuilder owed a duty of care to a subsequent purchaser even though there was no privity of contract between the builder and the purchaser").

In *Town of Alma,* the supreme court held that its *Cosmopolitan Homes* decision was not in conflict with the economic loss rule, because the negligence claims in *Cosmopolitan Homes* arose from a duty independent of any duty imposed by contract. *See Town of Alma, supra,* 10 P.3d at 1265–66 (characterizing *Cosmopolitan Homes* as allowing subsequent purchasers to sue in negligence for latent defects because of a builder's independent duty to act without negligence in the construction of a home).

Significantly, in *Town of Alma, supra,* 10 P.3d at 1262, the supreme court also cited *Consolidated Hardwoods, Inc. v. Alexander Concrete Construction, Inc.,* 811 P.2d 440, 443 (Colo.App.1991), as "allowing [a] home-owner's negligence claim against [a] subcontractor because [an] independent duty was breached." While the independent duty in *Consolidated Hardwoods* arose as a result of work done in excess of that required by contract, Colorado, along with other jurisdictions, has also recognized a more general right of a purchaser of a home to recover property damages caused by the negligence of a subcontractor. *See Driscoll v. Columbia Realty–Woodland Park Co.,* 41 Colo.App. 453, 455, 590 P.2d 73, 74 (1978); *Juliano v. Gaston,* 187 N.J.Super. 491, 496, 455 A.2d 523, 525 (1982).

█ We read the supreme court's decision in *Cosmopolitan Homes* as strongly endorsing a policy favoring quality construction of homes. Subcontractors play an important part in the construction of homes; they are aware that their work is, ultimately, for the benefit of homeowners and that harm to homeowners from negligent construction is foreseeable. To discourage misconduct and provide an incentive for avoiding preventable harm, we conclude that subcontractors owe homeowners a duty of care, independent of any contract provision, in connection with the construction of homes. *Cf. Lembke Plumbing & Heating v. Hayutin,* 148 Colo. 334, 337, 366 P.2d 673, 675 (1961)(finding plumber

had a generic common law duty to exercise due care, caution, and skill, apart from any contractual duty, when the rights of others may be adversely affected).

Nevertheless, subcontractors assert that, under *Town of Alma, supra,* 10 P.3d at 1264 n. 12, the economic loss rule bars the HOA's lawsuit because it and the unit owners were thirdparty beneficiaries of the agreements between the subcontractors and the general contractor. We are not persuaded.

Assuming that the HOA and unit owners were third-party beneficiaries, they would be bound by any limitations contained in or arising from those agreements, if they attempted to enforce them. *See Parker v. Ctr. for Creative Leadership,* 15 P.3d 297, 298–99 (Colo.App.2000)(third-party beneficiary must accept contract's burdens along with its benefits). However, where, as here, purported third-party beneficiaries do not invoke the benefits of a contract, the contract may not be enforced against them. *See Harper v. Del. Valley Broadcasters, Inc.,* 743 F.Supp. 1076, 1084 (D.Del.1990)(rejecting argument which "utterly fail[s] to distinguish between contractually creating rights in or conferring benefits on a third person and imposing obligations on a person not party to the contract"), *aff'd,* 932 F.2d 959 (3d Cir.1991).

Any other conclusion undercuts the very rationale for the economic loss rule, that is, of rational economic actors bargaining at arm's length to allocate by contract their respective rights and liabilities, in lieu of tort duties imposed by law. *Town of Alma, supra,* 10 P.3d at 1262. In contrast here, neither the unit owners nor the HOA had the opportunity to bargain with the subcontractors.

We acknowledge that courts in some jurisdictions have applied the economic loss rule to bar homeowner lawsuits against subcontractors. *See Aas v. Superior Court,* 24 Cal.4th 627, 639, 101 Cal.Rptr.2d 718, 12 P.3d 1125, 1133 (2000)(superseded by statute as stated in *Rosen v. State Farm Gen. Ins. Co.,* 30 Cal.4th 1070, 135 Cal.Rptr.2d 361, 70 P.3d 351 (2003)); *Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244, 1248 (Fla.1993); *Calloway v. City of Reno,* 116 Nev. 250, 253–54, 993 P.2d 1259, 1261 (2000).

However, these jurisdictions also applied, or intimated that they would apply, the economic loss rule to bar homeowner lawsuits against builder-vendors. *See Aas v. Superior Court, supra,* 24 Cal.4th at 643, 101 Cal. Rptr.2d 718, 12 P.3d at 1136; *Calloway v. City of Reno, supra,* 116 Nev. at 261, 993 P.2d at 1266; *see also Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc., supra,* 620 So.2d at 1247.

Because the supreme court has indicated, in its treatment of *Cosmopolitan Homes* in its *Town of Alma* decision, that the economic loss rule would not be similarly applied in Colorado, we find these out-of-state authorities unpersuasive.

Consequently, the trial court erred in dismissing the negligence claims against the subcontractors on the basis of the economic loss rule.

The judgment is reversed, and the case is remanded for further proceedings.

Judge MARQUEZ and Judge ROY concur.