**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2560-23

1410 GRAND ADAMS, LLC,

     Plaintiff-Appellant,

v.

TREMATORE CONSTRUCTION,
LLC, TREMATORE
CONSTRUCTION CORP., and
AFFINITY MECHANICAL
SERVICES, INC.,

     Defendants-Respondents.

_____

Submitted May 28, 2025 – Decided June 24, 2025

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0359-23.

Kinney Lisovicz Reilly & Wolff PC, attorneys for appellant (James P. Lisovicz, of counsel; Julia C. Talarick and Kevin G. Monaghan, on the briefs).

Kennedys CMK LLP, attorneys for respondent Affinity Mechanical Services, Inc. (Ian J. Antonoff, of counsel and on the brief; Anthony Llaverias, on the brief).

Mandelbaum Barrett PC, attorneys for respondent Trematore Construction LLC (Andrew Gimigliano, of counsel and on the brief; Marlene Arabia, on the brief).

Rawle & Henderson, LLP, attorneys for respondent Trematore Construction Corp. (Richard Imossi, on the brief).

PER CURIAM

In this construction matter, plaintiff 1410 Grand Adams, LLC appeals from a February 16, 2024 order granting in part and denying in part defendants Trematore Construction Corporation's (Trematore Corp.) (collectively Trematore), and Affinity Merchant Services, Inc.'s (Affinity) motions for reconsideration dismissing count one of the complaint with prejudice and dismissing count two of the complaint without prejudice, which had been previously dismissed on summary judgment. Plaintiff also appeals from a March 12, 2024 order granting co-defendant Trematore Construction, LLC's (Trematore LLC) motion to dismiss, which was converted to a motion for summary judgment. We affirm both orders under review.

I.

Our review of an order granting summary judgment requires our consideration of "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether

the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). Here, we discern the following facts from the statements of material facts,[1] and the record of the proceedings before the motion judges, viewed in the light most favorable to plaintiff. Pace v. Hamilton Cove, 258 N.J. 82, 96 (2024).

### A.

### Factual Background

This matter involves a construction project owned by plaintiff located at 1410 Grand Street in Hoboken (the Project). Plaintiff entered into a prime contract with Bijou Design Build (Bijou), the general contractor, to construct a mixed-use, six-story building (the Grand-Bijou Contract). According to the Grand-Bijou Contract, "the [c]ontractor shall complete the [w]ork described in the [c]ontract [d]ocuments for the Project."

On March 20, 2017, Bijou and Trematore LLC entered into the Bijou - Trematore LLC Subcontract for plumbing and mechanical work. Under Section 1.1, the Bijou - Trematore LLC Subcontract states, "[t]he subcontractor shall

---

[1] We note defendants submitted "statements of material facts" in support of their motions to dismiss. Motions to dismiss filed under Rule 4:6-2(e) do not require a statement of material facts. Motions for summary judgment under Rule 4:6-2, however, "shall be served with a brief and a separate statement of material facts."

complete the [w]ork described in the [c]ontract [d]ocuments for the Project. The [c]ontract [d]ocuments consist of this [a]greement signed by [Bijou] and [s]ubcontractor and the [p]rime [c]ontract between [Bijou] and [o]wner." Under Section 7.6, the Bijou - Trematore LLC Subcontract states, "[t]he [c]ontractor and [s]ubcontractor waive claims against each other for consequential damages arising out of or relating to this [s]ubcontract, including without limitation, any consequential damages due to either party's termination."

Further, Section 8.8 of the Bijou - Trematore LLC Subcontract states:

> WAIVERS OF SUBROGATION[:] The [c]ontractor and [s]ubcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the [o]wner, the [a]rchitect, the [a]rchitect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property [i]nsurance provided under the [p]rime [c]ontract or other property insurance applicable to the [w]ork, except such rights as they may have to proceeds of such insurance held by the [o]wner as a fiduciary. The [s]ubcontractor shall require of the [s]ubcontractor[]s, [s]ub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay

4

the insurance premium directly or [i]ndirectly, and whether or not the person or entity had an insurable interest in the property damaged.

On March 20, 2017, Trematore Corp. and Affinity entered into the Trematore Corp. - Affinity Subcontract, under which Affinity agreed to perform plumbing work at the Project. Article 2.4, Schedule 17 of the Trematore Corp. - Affinity Subcontract states:

> Waivers of [s]ubrogation. The [g]eneral [c]ontractor/[o]wner/Trematore . . . [Corp.] and [s]ubcontractor waive all rights against (1) each other and any of their [s]ubcontractors, [s]ub-[s]ubcontractors, agents and employee[s], each of the other, and (2) the [g]eneral [c]ontractor/[o]wner/Trematore . . . [Corp.], the [a]rchitect, the [a]rchitect's consultants, separate [s]ubcontractors, agents and employees for damages caused by fire or other perils to the extent covered by property insurance provided under the [c]ontract or [to other] property insurance applicable to the work except such rights as they may have to proceeds of such insurance held by the [g]eneral [c]ontractor/[o]wner/Trematore . . . [Corp.] as fiduciary. The [s]ubcontractor shall require of the [s]ubcontractor[]s [s]ub-[s]ubcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. If possible, the policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and

5

whether or not the person or entity had an insurable interest in the property damaged.

On March 10, 2019, a hot water pipe detached, causing water damage to the Project. On March 10, 2019, Bijou employee Matthew Testa was notified at approximately 9:00 p.m. that "water was pouring through the garage ceiling at the west end" of the Project. In an email memorializing the incident, Testa stated:

> I was alerted immediately. When I got to the site at approximately 9:20 [p.m.], I immediately shut off the water main valve, and walked up the stairs to assess the damage. The source of the leak seemed to be coming from the washer/dryer ceiling of unit 403. After [twenty] minutes, the water pressure dissipated and water ceased from coming out of the ceiling, however it continued to cascade down through the residential units below and into the garage.

The next day, an investigation revealed the water leak resulted from "an improperly installed compression ring on a [half-]inch domestic water line" installed by Affinity. The water leak damaged fourteen residential units and one amenity space, gypsum wallboard, insulation, hardwood flooring, circuit breakers, appliances, cabinetry, and other items. Because of the water damage, the temporary certificate of occupancy was delayed from an anticipated issuance date of March 19, 2019, until the actual issuance date of May 6, 2019, a period of forty-eight days.

A-2560-23

On May 21, 2019, plaintiff submitted a property damage claim to its insurance carrier, Aspen American Insurance Company (Aspen).  Aspen paid plaintiff the total sum of $881,509.21[2] for the property damage stemming from the incident.  Aspen then sought subrogation through Affinity's and Trematore LLC's insurance carriers.  Both subrogation claims were denied based on the subrogation clauses contained in the Bijou - Trematore LLC Subcontract and the Trematore Corp. - Affinity Subcontract.

B.

The Federal Action

On March 1, 2022, Aspen filed a complaint in the United States District Court for the District of New Jersey against Affinity and Echelon Services Limited Liability Company (Echelon)[3] (the federal action).  Aspen alleged three counts in its complaint:  negligence: property damage (count one); negligence: delay in completion (count two); and gross negligence (count three).  In the

_____

[2]  The record includes three checks were paid by Aspen to plaintiff and M & T Bank. The first check dated May 24, 2019 is for $100,000; the second check dated June 13, 2019 is for $442,025.06; and the third check dated December 19, 2019 is for $339,484.15.

[3]  Echelon is a commercial licensed contractor who performed plumbing services at the Project as a subcontractor to Trematore Corp.  Echelon is not participating in this appeal.

Federal Action complaint, Aspen alleged $552,025.06 of the total paid to plaintiff was attributable to property damages, and the remaining $339,484.15 was for "[d]elay in the completion of construction costs." As damages, Aspen claimed it was owed $891,509.21, including a $10,000 deductible.

On April 2, 2022, Affinity and Echelon filed answers to the Federal Action and asserted a third-party complaint against Brian Trematore Plumbing and Heating, Inc. (Brian Trematore, Inc.) for non-payment on the balances due to them from their contracts on the Project. On October 24, 2022, Brian Trematore, Inc. filed an answer to the third-party complaint and a fourth-party complaint against Bijou seeking the balance owed to it under the Bijou - Trematore LLC Subcontract.

On January 27, 2023, Bijou filed an answer to Brian Trematore, Inc.'s fourth-party complaint and filed a fifth-party complaint against Trematore LLC, Trematore Corp., and Affinity. The fifth-party complaint alleged four counts, including consequential loss due to property damage (count one); breach of contract-failure to indemnify (count two); and fictitious pleadings (counts three and four). The record does not indicate the status of the Federal Action.

C.

The Law Division Action

On the same day, January 27, 2023, plaintiff filed a complaint in the Law Division against Trematore LLC, Trematore Corp., and Affinity alleging consequential loss due to property damage (count one); and breach of contract-failure to indemnify (count two).[4]  Plaintiff alleged "a domestic hot water pipe detached from its coupling, causing water damage to the Project."  Plaintiff claimed the "coupling failure" was caused by "improper installation practices engaged in by Trematore and Affinity."[5]  As a result of the "physical damage" to the Project, plaintiff alleges it suffered "consequential [losses,] including[] but not limited to, interest on the construction loan, leasing/marketing costs, and loss of rent."

As remedies, plaintiff sought indemnification as a "third-party beneficiary of the contracts between Bijou and Trematore and Trematore and Affinity," compensatory damages, consequential damages, and attorney's fees.  Trematore LLC, Trematore Corp., and Affinity filed answers to the complaint.

---

[4]  Counts three and four of the complaint address fictitious pleadings and are not germane to our opinion.

[5]  We note that plaintiff's Law Division complaint under review mirrors the fifth-party complaint filed by Bijou in the federal action.

D.

Motion Practice

On October 4, 2023, Affinity filed a motion to dismiss pursuant to Rule 4:6-2(e) for failure to state a claim. Trematore Corp. filed a cross-motion to dismiss for failure to state a claim. Affinity argued that plaintiff's claims are barred by the economic loss doctrine. In addition, Affinity contended there was no direct privity between it and plaintiff, and that plaintiff failed to name an indispensable party.

In support of its motion to dismiss, counsel for Affinity submitted a statement of material facts and a certification with the following documents attached: the Law Division complaint, the Bijou - Trematore LLC Subcontract, a work order between Trematore Corp. and Affinity dated April 20, 2017, proof of loss statements made to Aspen by plaintiff, copies of checks paid by Aspen to plaintiff, and pleadings from the Federal Action.

In support of its cross-motion to dismiss, counsel for Trematore Corp. submitted a response to Affinity's statement of material facts and a counter-statement of material facts. Trematore Corp. argued that dismissal was warranted on the grounds Section 7.6 of the Bijou - Trematore Subcontract provides Bijou and Trematore Corp. "waive claims against each other for

consequential damages arising out of or relating to this subcontract, including without limitation, any consequential damages due to either party's termination."

Termatore Corp. argued it was hired by plaintiff to perform work on the Project and that plaintiff "is not a signatory to the Bijou [-] Trematore Subcontract." Trematore Corp. asserted the Bijou - Trematore Subcontract did not establish any "direct privity" between plaintiff and Trematore Corp., and plaintiff does not have direct privity with Trematore Corp.

Because multiple exhibits beyond the pleadings were attached to counsels' certifications, the first motion judge converted the motions to dismiss to motions for summary judgment. On November 3, 2023, the first motion judge conducted oral argument on Affinity's motion for summary judgment and Trematore Corp.'s cross-motion for summary judgment.[6]

On November 15, 2023, the first motion judge read her opinion into the record and granted both motions.[7] She found that the negligence count was barred by the economic loss doctrine, and any contract claim was barred based on the lack of contractual privity between plaintiff and Trematore Corp., and

---

[6] The November 3, 2023 transcript is not contained in the record.

[7] The transcript of the decision is mistakenly dated November 14, 2023, but the signature page has an correct date of November 15, 2023.

plaintiff and Affinity.  The first motion judge determined that plaintiff failed to meet the exceptions to the economic loss doctrine as Affinity did not have an independent duty of care to plaintiff and plaintiff could have instead filed a direct action against Bijou.  In addition, the first motion judge held that plaintiff's right to sue for consequential damages was waived under Section 7.6 of the Bijou - Trematore LLC Subcontract.  Two memorializing orders were entered that day dismissing the complaint against Trematore Corp. and Affinity with prejudice.

On January 3, 2024, Trematore LLC filed a motion to dismiss the complaint.  Trematore LLC argued that plaintiff failed to join Bijou as an indispensable party, and its claims were barred by the economic loss doctrine. Trematore LLC contended dismissal was warranted because of the lack of privity between plaintiff and Trematore LLC.  Further, Trematore LLC asserted that consequential damages are not recoverable because plaintiff is bound by Section 7.6 of the Bijou - Trematore LLC Subcontract.

Counsel for Trematore LLC submitted a moving certification in support of the motion to dismiss.  The certification had essentially the same exhibits annexed to it that had been previously filed by counsel for Affinity and Trematore Corp.

12

On January 17, 2024, a consent order was entered by the second motion judge ordering Trematore LLC to serve certified answers to interrogatories, a notice to produce, documents, and other responsive materials prior to January 29, 2024, otherwise a dismissal without prejudice will result under Rule 4:23-5. The record is unclear as to whether any discovery was provided to plaintiff.

On January 31, 2024, plaintiff filed a motion for reconsideration of the November 15, 2023 orders. On February 16, 2024, in an oral decision, the first motion judge granted in part and denied in part plaintiff's motion for reconsideration:

> In conclusion, the [c]ourt finds that while the [e]conomic [l]oss [d]octrine does not apply, count one of the complaint was properly dismissed due to the waiver of consequential damage provision in the [Bijou -]Trematore [LLC] [S]ubcontract. However, plaintiff has demonstrated good cause for reversal of the order dismissing count two of the complaint with prejudice. Instead, the [c]ourt finds that it is the interest of justice and in accordance with well established law to dismiss count two of the complaint without prejudice.

A memorializing order was entered.

On February 20, 2024, the second motion judge conducted oral argument on Trematore LLC's motion to dismiss.[8] On March 12, 2024, the second motion

---

[8] The February 20, 2024 transcript is not contained in the record.

judge issued a memorandum of decision regarding Trematore LLC's motion to dismiss. The second motion judge held that the economic loss doctrine barred plaintiff's claim against Trematore LLC:

> In sum, while [p]laintiff might argue that it relied on Trematore [LLC] to competently execute [its] plumbing tasks and prevent any economic losses, this reliance is intrinsically linked to the contractual obligations Trematore [LLC] undertook. Even read in the most general sense, [p]laintiff's allegation that Trematore [LLC] had an obligation to perform work "not negligently" is really a claim that stems from contract performance, specifically the implied warranty of good workmanship. These are not damages borne out of a societal duty that Trematore [LLC] owed [p]laintiff, like a duty of care a doctor owes a patient irrespective of a contract. Instead, these damages emerge only from the parameters of a contract. Thus, [p]laintiff's claim is squarely within the realm of tort actions pursuing economic damages, barred under the economic loss doctrine.

The second motion judge also found that the two exceptions to the economic loss doctrine were inapplicable. The first exception, when a plaintiff can establish an independent duty of care separate from the parties' contractual relationship, did not apply because Trematore LLC was duty bound under the contract documents to perform its duties "in a good and workmanlike manner, and in accordance with industry standards [which] are rooted in the contract scheme for the Project."

14 A-2560-23

As to the second exception, when a plaintiff can show it would not otherwise have a remedy, the second motion judge found the economic loss doctrine did not apply because:

> Plaintiff has a clear remedy available through a breach of contract claim against its general contractor. Trematore [LLC] was engaged as a second-tier subcontractor by Bijou, and as such, the rights, responsibilities, and expectations of all parties were meticulously delineated in the contract scheme and hierarchy of the Project. Any grievances arising from the performance of the work, including the alleged incident involving the hot water pipe, should be addressed within the ambit of these contractual obligations and relationships. Thus, as [p]laintiff has a clear remedy against its general contractor here, this second exception under the [e]conomic [l]oss [d]octrine does not apply.

The second motion judge also determined that because plaintiff was a third-party beneficiary of the Bijou - Trematore LLC Subcontract, and Section 7.6 of the Bijou - Trematore LLC Subcontract waived consequential damages, count one of plaintiff's complaint was dismissed with prejudice because "[p]laintiff is a third-party beneficiary of the [Bijou - ]Trematore [LLC] [S]ubcontract and has waived its right to assert consequential damages against Trematore [LLC.]" The second motion judge dismissed count two "without prejudice" as to Trematore LLC "to allow any future indemnification claims

A-2560-23

brought against Trematore [LLC] pursuant to the [S]ubcontract." This appeal followed.

Before us, plaintiff raises the following arguments for our consideration:

(1) the second motion judge erred in granting summary judgment to Trematore LLC as the negligence action is not barred pursuant to the economic loss doctrine;

(2) the second motion judge erred in granting summary judgment to Trematore LLC because the negligence cause of action is not barred by a lack of privity between plaintiff and Trematore LLC;

(3) both judges erred in granting summary judgment to Affinity and Trematore Corp. as the negligence cause of action is not barred pursuant to the terms of the Bijou - Trematore Subcontract;

(4) the negligence cause of action cannot be barred pursuant to plaintiff's alleged failure to join Bijou;

(5) the second motion judge erred in granting summary judgment as to Trematore LLC as there are genuine issues of material fact; and

(6) the second motion judge erred in converting Trematore LLC's motion to dismiss to a motion for summary judgment.

16

## II.

Where, as here, a <u>Rule</u> 4:6-2(e) motion involves the consideration of "factual allegations made by the parties in certifications outside the pleadings, [we are] required to apply the standard governing summary judgment motions in <u>Rule</u> 4:46-2(c)." <u>R.K. v. D.L., Jr.</u>, 434 N.J. Super. 113, 121 (App. Div. 2014). "Our review of a summary judgment ruling is de novo. We apply the same standard as the trial court." <u>Conley v. Guerrero</u>, 228 N.J. 339, 346 (2017) (citations omitted). "That is, summary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" <u>Ibid.</u> (quoting <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 N.J. 189, 199 (2016)).

A trial court's decision to grant or deny a motion for reconsideration is reviewed for abuse of discretion. <u>Branch v. Cream-O-Land Dairy</u>, 244 N.J. 567, 582 (2021). A trial court should grant reconsideration when "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." <u>Castano v. Augustine</u>, 475 N.J. Super. 71, 78 (App. Div. 2023) (alterations in original) (quoting <u>Triffin v. SHS Grp., LLC</u>, 466 N.J. Super. 460, 466 (App. Div. 2021)).

## A.

Plaintiff first argues that the second motion judge erred in granting summary judgment to Trematore LLC pursuant to the economic loss doctrine. Plaintiff contends this matter does not involve purely economic damages. In the alternative, plaintiff asserts Trematore LLC owed it an "independent duty of care." Plaintiff also avers the first motion judge correctly held on reconsideration that the economic loss doctrine did not bar its negligence action against Trematore Corp. and Affinity.

On March 12, 2024, the second motion judge determined:

> Plaintiff also admits that the economic loss doctrine "prohibits recovery in a tort action of pure economic losses arising out of a defendant's negligent performance of a contractual obligation." . . . So, while [p]laintiff argues that the case is better suited to be resolved by tort principals, it cannot refute the fact that Trematore [LLC]'s duty to [p]laintiff arose from contract, not tort law. As such, Trematore [LLC]'s duty to perform work on the project in a good and workmanlike manner arises from its second-tier subcontract, and not from common law. Without the contract, Trematore [LLC] has no obligation to perform work on the Project. Therefore, given that the damages sought are wholly economic in nature and arise from a contractual relationship, it is both legally consistent with New Jersey law for [p]laintiff to pursue a breach of contract claim, rather than a tort claim grounded in negligence.

In sum, while [p]laintiff might argue that it relied on Trematore [LLC] to competently execute their plumbing tasks and prevent any economic losses, this reliance is intrinsically linked to the contractual obligations Trematore [LLC] undertook. Even read in the most general sense, [p]laintiff's allegation that Trematore [LLC] had an obligation to perform work "not negligently" is really a claim that stems from contract performance, specifically the implied warranty of good workmanship. These are not damages borne out of a societal duty that Trematore [LLC] owed [p]laintiff, like a duty of care a doctor owes a patient irrespective of a contract. Instead, these damages emerge only from the parameters of a contract. Thus, [p]laintiff's claim is squarely within the realm of tort actions pursuing economic damages, barred under the economic loss doctrine.

"Negligence is 'conduct which falls below a standard recognized by the law as essential to the protection of others from unreasonable risks of harm.'" Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) (quoting Marshall v. Klebanov, 378 N.J. Super. 371, 378 (App. Div. 2005)). "To establish a claim of negligence, a plaintiff must show that there was a legal duty, the duty was breached, the breach proximately caused a foreseeable injury, and plaintiff suffered damages." Id. at 24.

In our State, the economic loss doctrine precludes tort liability when the relationship between the parties is based solely on a contract. See Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002) ("a tort remedy does not arise from

19

a contractual relationship unless the breaching party owes an independent duty imposed by law"); Spring Motors Distribs. Inc. v. Ford Motor Co., 98 N.J. 555, 579-80 (1985) ("economic losses . . . are better resolved under principles of contract law . . . [which] are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement"); Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995) (finding a plaintiff is prohibited "from recovering in tort economic losses to which their entitlement flows only from a contract"). Based upon our de novo review, we discern no error in the second motion judge's grant of summary judgment to Trematore LLC and dismissal of plaintiff's economic loss doctrine claim.

Under the economic loss doctrine, a plaintiff is prohibited "from recovering in tort economic losses to which their entitlement only flows from contract." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting Duquesne Light Co. 66 F.3d at 618). The doctrine precludes a tort remedy in "a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel, 170 N.J. at 316-17 (holding that "the existence of duties that are specifically imposed by

law in New Jersey . . . can be enforced separately and apart from contractual obligations.").

In essence, the doctrine "functions to eliminate recovery on 'a contract claim in tort clothing.'" G&F Graphic Servs. Inc. v. Graphic Innovators, Inc., 18 F. Supp. 3d 583, 588-89 (D.N.J. 2014) (quoting SRC Constr. Corp. v. Atl. City Hous. Auth., 935 F. Supp. 2d 796, 801 (D.N.J. 2013)); see also New Mea Const. Corp. v. Harper, 203 N.J. Super. 486, 494 (App. Div. 1985) (finding that defendant's failure to use construction material specified in the parties' contract was a type of conduct "not ordinarily alleged in a tort case," and could not give rise to a separate claim by "[m]erely nominally casting [the] cause of action" as a tort claim).

To prevail under a negligence claim, personal injury or property damage must be alleged. Aronsohn v. Mandara, 98 N.J. 92, 97 (1984). Economic expectations between parties to a contract are not entitled to supplemental protection by negligence principles. Spring Motors, 98 N.J. at 581. "[R]ecovery for economic loss on a negligence theory [is] inappropriate." Aronsohn, 98 N.J. at 97; Spring Motors, 98 N.J. at 580-82.

The economic loss doctrine evolved as part of the common law "as an effort to establish the boundary line between contract and tort remedies." Dean

v. Barrett Homes, Inc., 204 N.J. 286, 295 (2010). The doctrine "bars tort remedies in strict liability or negligence when the only claim is for" economic loss, as opposed to physical injury or property damage. Ibid. Early economic loss cases arose in the context of defective goods and strict liability, see, e.g., Spring Motors, 98 N.J. at 579, but has expanded to service contracts, Saltiel, 170 N.J. at 297.

The purpose of compensatory damages is to compensate plaintiff for actual loss. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48 (1984). "It is well-settled that the 'law abhors damages based on mere speculation.'" Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (App. Div. 2002) (quoting Caldwell v. Haynes, 136 N.J. 422, 442 (1994)). However, "[w]here a wrong has been committed, and it is certain that damages have resulted, mere uncertainty as to the amount will not preclude recovery—courts will fashion a remedy even though the proof on damages is inexact." Kozlowski v. Kozlowski, 80 N.J. 378, 388 (1979).

A plaintiff is only required to "prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." Lane v. Oil Delivery, Inc.,

216 N.J. Super. 413, 420 (App. Div. 1987). We next apply these foundational principles to the matter before us.

Plaintiff contends the economic loss doctrine does not bar its claim for lost rental income because, as the first motion judge ruled on reconsideration, "damage to other property and subsequent harm" serves as the "anchor" for the lost rent claim. Plaintiff argues the monies it received from Aspen to repair the property damage "does not change the fact that the loss of rent arises from property damage," and thus, plaintiff's negligence cause of action is not barred against Trematore LLC under the economic loss doctrine. We are unpersuaded.

The undisputed facts of record establish that plaintiff's claim against Trematore LLC, Trematore Corp., and Affinity is solely contractual in nature. The $357,758.01 claimed by plaintiff is comprised of economic losses stemming from lost rent caused by the water leak and resultant damage due to the pipe. Plaintiff's claims all arise from the Bijou - Trematore LLC Subcontract for which plaintiff was already compensated by Aspen.

Moreover, on February 22, 2024, the first motion judge placed her reconsideration decision on the record. The first motion judge stated that she erred in finding that the economic loss doctrine does not bar plaintiff's claims for loss of rental income under count one of the complaint, which she deemed

consequential damages arising from a "traumatic event." We part company with the first motion judge's ruling on this issue. Nonetheless, the first motion judge found that count one was properly dismissed based on Section 7.6 of the Bijou-Trematore LLC Subcontract. The first motion judge found that since Bijou and Trematore LLC cannot bring consequential damages claims against the other, plaintiff is also barred from bringing such a claim because it is a third-party beneficiary of the contract. The record supports that determination. Thus, count one of the complaint was properly dismissed.

B.

Next, plaintiff argues the second motion judge erred in granting summary judgment to Trematore LLC because the negligence cause of action is not barred by a lack of privity between these two parties. We disagree.

It is generally accepted that the economic loss doctrine does not require the parties to be in privity of contract. See BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004) (explaining that the economic loss doctrine applies where there is a series of interrelated contracts, even despite privity, because the parties have the ability to allocate risk); Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc., 648 F. Supp. 2d 707, 713 (E.D. Pa. 2009) (stating that

"privity of contract is not required for application of the economic loss doctrine to [a] [p]laintiff's negligence claims").

The economic loss doctrine bars negligence claims when the party asserting the action has a contractual remedy, thereby maintaining a boundary between contract and tort law and preventing amplified exposure to the party responsible for the loss. See Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 248 (3d Cir. 2010) ("New Jersey courts have consistently held that contract law is better suited to resolve disputes between parties where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities with equal bargaining power and that could have been the subject of their negotiations.")

There are two exceptions to the economic loss doctrine. The first is where the injured party would not otherwise have a remedy. People Exp. Airlines, Inc. v. Consol. Rail & Corp., 100 N.J. 246, 249-50, 254 (1985) (holding an airline could recover for pure economic loss where a tank car in a freight yard ignited and caused evacuation of the nearby airport because the airline had no contract with the owners of the tank car and its only means of recovery was in tort).

The second exception is if an independent duty exists. Saltiel, 170 N.J. at 316 (finding "[u]nder New Jersey law, a tort remedy does not arise from a

contractual relationship unless the breaching party owes an independent duty imposed by law.").  This refers to situations in which an independent duty exists irrespective of contractual obligations, such as for doctors, lawyers, insurance brokers, and manufacturers in products-liability law.  Id. at 317.

Our Supreme Court has stated in regard to the economic loss doctrine:

> The economic loss doctrine prohibits the recovery in a tort action of economic losses arising out of a breach of contract. See Dean, 204 N.J. at 296-97.  Thus, under the economic loss doctrine, "the [Products Liability Act, N.J.S.A. 2A:58C-1 to -11] and common law tort actions do not apply to damage caused to the product itself, or to consequential but purely economic losses caused to the consumer because of a defective product." Ford Motor Credit Co., LLC v. Mendola, 427 N.J. Super. 226, 240 (App. Div. 2012).
>
> [Sun Chem. Corp. v. Fike Corp., 243 N.J. 319, 328 n.2 (2020).]

In a separate case, our Supreme Court discussed the distinction between cases arising in tort or in contract:

> At common law a plaintiff who had a contractual relationship with . . . defendant was able to sue in tort if . . . plaintiff could establish that the alleged breach of duty constituted a "separate and independent tort." [Michael Dorff, Attaching Tort Claims to Contract Actions: An Economic Analysis of Contract, 28 Seton Hall L. Rev. 390, 407 (1997)].  However, "the boundary line between tort and contract actions is not capable of clear demarcation." New Mea, 203 N.J. Super. at 493, 497.  Similarly, Prosser & Keeton on the Law of Torts

states that "[t]he distinction between tort and contract liability, as between parties to a contract, has become an increasingly difficult distinction to make."  W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 92, at 655 (5th ed. 1984) (Prosser & Keeton).

Prosser & Keeton offers seven guidelines to assist in distinguishing between tort and contract claims:

> (1) Obligations imposed by law are tort obligations;
>
> (2) Tort obligations may not be disclaimable;
>
> (3) Misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things;
>
> (4) Recovery of intangible economic loss is generally determined by contract;
>
> (5) There is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made;
>
> (6) Duties of affirmative action are often imposed by law apart from the promises made;
>
> (7) Damages for a loss suffered by a promisee in reliance on a promisor to carry out a promise may be recoverable on a tort negligence theory.
>
> [Prosser & Keeton, § 92, at 656-58.]

27

Clearly relevant to the facts of this case is the fourth guideline. Prosser & Keeton states that "[g]enerally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." Id. at 657. In fact, most jurisdictions hold that a contractor's liability for economic loss is limited to the terms of the contract.

[Saltiel, 170 N.J. at 309-10.]

We are convinced that plaintiff's claims are purely economic in nature. Plaintiff seeks consequential damages for lost rent. No claim is made in the complaint for personal injury or property damages. It is uncontroverted that Trematore's and Affinity's obligations—if any—owed to plaintiff stem from their interrelated contracts, which allocate risks and remedies.

Here, Aspen already paid $339,484.15[9] in "soft costs," the sum originally sought in this action resulting from a delay in the completion of the construction of the Project. As Trematore and Affinity point out, it appears plaintiff is seeking reimbursement for losses it was already compensated for. Courts of this State have consistently precluded recovery of duplicative damages predicated on the same injuries—or losses—as here. See Battaglia v. United Parcel Serv. Inc., 214 N.J. 518, 562 (2013). In any event, because plaintiff's remedy lies in

---

[9] Plaintiff later amended the sum it was seeking to $357,758.01.

a breach of contract claim and not a tort claim, the first exception to the economic loss doctrine does not apply.

We also hold that the second exception to the economic loss doctrine—an independent duty of care—did not exist between plaintiff and Trematore or Affinity. The second motion judge explicitly found Trematore LLC's duties, in accordance with the contract documents, were to perform "in a good and workmanlike manner, and in accordance with industry standards . . . rooted in the contract scheme for the Project." Contrary to plaintiff's contention, Trematore and Affinity did not breach any independent duty imposed by law. Based upon our de novo review, we conclude this matter involves purely economic loss and because no exception to the economic loss doctrine applies, plaintiff's negligence claim against Trematore and Affinity is barred for two reasons.

First, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel, 170 N.J. at 316; see also Int'l Mins. & Mining Corp. v. Citicorp N. Am., Inc., 736 F. Supp. 587, 597 (D.N.J.1990); New Mea, 203 N.J. Super. at 493. "Generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm

29

to persons and tangible things." Saltiel, 170 N.J. at 310 (quoting Prosser & Keeton at 657). Our courts have found that some circumstances impose duties under both contract and tort, such as with doctors, attorneys, manufacturers, or bailees. Id. at 317. However, in those cases, the law imposed duties independent of those that arose under contract, for example, the duty to exercise due care. Ibid. No such duty exists here.

Second, plaintiff could have asserted a breach of contract claim against Bijou for the lost rent. Based on this record, Bijou is the only entity involved in the Project having direct privity of contract with plaintiff. Affinity possessed specific plumbing skills that it was obligated to apply under the contract. Specifically, the Trematore Corp. - Affinity Subcontract provides:

> "[s]ubcontractor shall conduct its operations so as to not to damage existing structures, any work installed either by it or by other [s]ubcontractors or any personal property of the [g]eneral [c]ontractor/[o]wner/Trematore . . . [Corp.] and others. In case of any such damage resulting from its operations, [s]ubcontractor shall repair and make good as new the damaged portions at its own expense with the consent of the damaged person or settle with the damaged person."

On the record provided, we are unable to discern any duty owed to plaintiff by Trematore and Affinity that is independent of the duties that arose

contractually. Thus, we glean no reason to disturb dismissal of plaintiff's complaint.

III.

Next, we address plaintiff's contention that both judges erred in granting summary judgment to Affinity and Trematore. Plaintiff argues both judges incorrectly determined that Section 7.6 of the Bijou - Trematore LLC Subcontract barred plaintiff's claim for consequential damages. Again, we disagree.

Our review of the court's interpretation and construction of a contract is de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). Our task is to "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009). "Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017). "[U]nambiguous contracts are to be enforced as written . . . ." Grow Co., Inc. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008).

A-2560-23

As our Supreme Court explained when deciding the enforceability of an arbitration provision, "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third[-]party beneficiary theories, waiver and estoppel." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 188 (2013) (internal emphasis omitted) (quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009)).

"The standard applied by courts in determining third[-]party beneficiary status is 'whether the contracting parties intended that a third[-]party should receive a benefit which might be enforced in the courts . . . .'" Reider Cmtys., Inc. v. Twp. of N. Brunswick, 227 N.J. Super. 214, 222 (App. Div. 1988) (quoting Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 77 (E. & A. 1940)). "[T]he intention of contracting parties to benefit an unnamed third[-]party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution." Ibid.

"The principle that determines the existence of a third[-]party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises

32

merely as an unintended incident of the agreement." Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982) (footnote omitted).

Here, Section 7.6 in the Bijou - Trematore LLC Subcontract states "[t]he [c]ontractor and [s]ubcontractor waive claims against each other for consequential damages arising out of or relating to this [s]ubcontract, including without limitation, any consequential damages due to either party's termination."

In denying plaintiff's motion for reconsideration on this issue, the first motion judge emphasized both the Bijou - Trematore LLC Subcontract and the Trematore Corp. - Affinity Subcontract specifically reference plaintiff in their indemnity provisions, requiring Trematore and Affinity to defend plaintiff against any claims. The first motion judge held the plain language of the waiver provision "clearly indicates an intention for all claims for consequential losses arising out of [Affinity's] performance . . . under the [s]ubcontract to be barred."

Accordingly, the first motion judge properly dismissed count one of plaintiff's complaint. To hold otherwise would give plaintiff "an unfair or unreasonable advantage over" Trematore and Affinity. Washington Constr. Co. v. Spinella, 8 N.J. 212, 218 (1951).

In a similar vein, the second motion judge determined count one of plaintiff's complaint had to be dismissed with prejudice because plaintiff is a

third-party beneficiary of the Bijou - Trematore LLC Subcontract and thereby waived its right to assert consequential damages against Trematore LLC. The second motion judge dismissed count two of plaintiff's complaint without prejudice to allow future indemnification claims to be brought against Trematore LLC pursuant to the subcontract.

N.J.S.A. 2A:15-2 provides: "A person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court . . . although the consideration of the contract did not move from him [or her]." A third-party may only enforce a contract if they are an intended beneficiary, rather than an incidental beneficiary, of the agreement. Broadway, 90 N.J. at 259. "The determining factor as to the rights of a third[-]party beneficiary is the intention of the parties who actually made the contract." Ibid. "If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." Ibid.

"Thus, the real test is whether the contracting parties intended that a third-party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third[-]party is named, is merely evidence of this intention." Ibid. The contracting parties "may expressly negate any legally enforceable right in a third[-]party. Likewise, they may expressly

34

provide for that right." Id. at 260. If the contract is silent on the issue, the court must "examine the pertinent provisions in the agreement and the surrounding circumstances to ascertain that intent." Ibid. (citing Talcott v. H. Corenzwit & Co., 76 N.J 305, 312 (1978)).

Here, we are convinced the Bijou - Trematore LLC Subcontract demonstrates an intent by Bijou and Trematore LLC to confer plaintiff with third-party beneficiary status as evidenced in numerous sections of the subcontract. Not only do many of these sections reference plaintiff, but many sections give plaintiff enforceable rights. For example, Section 4.4.5 states that "the [s]ubcontractor agrees that the [c]ontractor, [o]wner, [a]rchitect, [e]ngineers, and [d]esign [c]onsultants each have the authority to reject [w]ork of the [s]ubcontractor that does not conform to the [p]rime [c]ontract." (emphasis added). Section 1.8.1 states that the subcontractor:

> shall defend, indemnify and hold harmless the [o]wner, [c]ontractor, [a]rchitect, [a]rchitect's [c]onsultants, other [d]esign [c]onsultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, including construction defect claims, arising out of or resulting from performance of the [s]ubcontract's [w]ork under this [s]ubcontract including the [s]ubcontractor's [s]ub-subcontractors,

anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in whole or in part by a party indemnified hereunder.

[(emphasis added).]

Further, Section 8.8 states:

The [c]ontractor and [s]ubcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the [o]wner, the [a]rchitect, the [a]rchitect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property [i]nsurance provided under the [p]rime [c]ontract or other property insurance applicable to the [w]ork, except such rights as they may have to proceeds of such insurance held by the [o]wner as a fiduciary. The [s]ubcontractor shall require of the [s]ubcontractor's [s]ub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein.

[(emphasis added).]

Clearly, all of these provisions granted plaintiff enforceable rights under the Bijou - Trematore LLC Subcontract.

Because the Bijou - Trematore LLC Subcontract unquestionably confers benefits upon plaintiff, it is also bound by Section 7.6, which states, "[t]he [c]ontractor and [s]ubcontractor waive claims against each other for

36

consequential damages arising out of or relating to this [s]ubcontract, including without limitation, any consequential damages due to either party's termination." Thus, as the record shows plaintiff is a third-party beneficiary of the Bijou - Trematore LLC Subcontract, both judges properly dismissed plaintiff's negligence claims against Trematore and Affinity.

IV.

Plaintiff also argues the plain language contained in Section 7.6 of the Bijou - Trematore LLC Subcontract does not expressly state that plaintiff waived its claims for consequential damages. Plaintiff maintains the motion judges erred by interpreting the term "contractor" to mean "owner and contractor" without re-writing the terms of the Bijou - Trematore LLC Subcontract.

At the appellate level, "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998). Appellate courts decide such purely legal questions without deferring to a lower court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); see also Zaman v. Felton, 219 N.J. 199, 216 (2014).

When interpreting a contract, the court should consider the plain language of the contract, the circumstances surrounding the contract, and the contract's purpose. Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115-16 (2006). In doing so, and in determining whether a contract is ambiguous, courts may consider extrinsic evidence offered in support of conflicting interpretations. Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993). Such evidence may include the structure of the contract, the parties' bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. Ibid.

Although courts may use course of performance and course of dealing in interpreting contract terms, "express terms are given greater weight than course of performance [and] course of dealing." Restatement (Second) of Conts. § 203(b) (Am. Law. Inst. 1981). However, "where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." Karl's Sales & Serv., Inc. v. Gimbel Bros. Inc., 249 N.J. Super. 487, 493 (App. Div. 1991). It should not "rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

Here, both judges dismissed count two "without prejudice" in order to allow "any future indemnification claims brought against [Trematore and Affinity] pursuant to the subcontract." This provision emanates from Section 1.8.1 of the Bijou - Trematore LLC Subcontract, which states that the subcontractor:

> shall defend, indemnify and hold harmless the [o]wner, [c]ontractor, [a]rchitect, [a]rchitect's [c]onsultants, other [d]esign [c]onsultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, including construction defect claims, arising out of or resulting from performance of the [s]ubcontract's [w]ork under this [s]ubcontract including the [s]ubcontractor's [s]ub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in whole or in part by a party indemnified hereunder.
>
> [(emphasis added).]

Our Supreme Court has previously stated:

> In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a

A-2560-23

rational meaning in keeping with the express general purpose. . . .

Even where the intention is doubtful or obscure, the most fair and reasonable construction, imputing the least hardship on either of the contracting parties should be adopted, . . . , so that neither will have an unfair or unreasonable advantage over the other. . . . . These rules apply in all circumstances, whether the agreement be integrated or unintegrated.

[Tessmar v. Grosner, 23 N.J. 193, 201 (1957).]

Here, to allow plaintiff to bring the claim under count two for "breach of contract-failure to indemnify," while also allowing them to not follow Section 7.6 of the Bijou - Trematore LLC Subcontract would be giving a third-party beneficiary all the benefits of a contract without being burdened by its obligations and create an unfair advantage in plaintiff's favor. Therefore, we reject plaintiff's argument.

V.

Plaintiff next argues its negligence cause of action cannot be barred as "Bijou is not an indispensable party to the negligence cause of action." "Whether a party is indispensable is fact sensitive." Int'l Brotherhood of Elec. Workers Loc. 400 v. Borough of Tinton Falls, 468 N.J. Super. 214, 225 (App. Div. 2021).

Indispensability, in the context of Rule 4:28-1(a), "is usually determined from the point of view of the absent party and in consideration of whether or not his rights and interests will be adversely affected." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 4:28-1 (2025). But the interests of parties already in the litigation are not absent from consideration. See, e.g., Int'l Brotherhood of Elec. Workers, 468 N.J. Super. at 225 ("[A] party is not truly indispensable unless he [or she] has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interests." (emphasis added) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 334 N.J. Super. 77, 90-91 (App. Div. 2000))). "Even if the court is mistaken in its decision to proceed in the absence of an interested person, it does not by that token deprive itself of the power to adjudicate as between the parties already before it . . . ." Pressler & Verniero, cmt. 1 on R. 4:28-1.

Here, Bijou was "to furnish and supply all labor, materials, and equipment necessary for the construction of the Project in accordance with the plans and specifications and contract documents." In addition, Bijou hired Trematore LLC "as subcontractor, by way of a written agreement . . . to provide the labor, materials, and equipment necessary to complete certain plumbing and

41

mechanical work to and for the Project in accordance with written plans and specifications and contract documents." It is unchallenged that Bijou is the only entity to which plaintiff entered into a contract. Nonetheless, plaintiff did not sue Bijou but instead filed a complaint against parties plaintiff had no direct contract with. Moreover, in the related Federal Action, Bijou directly filed an answer to the fourth-party complaint and a fifth-party complaint against Trematore and Affinity, which directly mirrors the claims in the matter under review. Contrary to plaintiff's assertion, it was well aware that Bijou was an indispensable party to this action.

## VI.

Plaintiff next argues that summary judgment was prematurely granted because Trematore operated under several distinct names and additional discovery is required to determine the appropriate Trematore entity that should have been named. "[S]ummary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (internal quotation marks omitted); see also Minola v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004) ("While we are aware that

ordinarily decision on a summary judgment should be withheld until completion of discovery, nevertheless, discovery need not be undertaken or completed if it will patently not change the outcome").

Plaintiff has failed to demonstrate the discovery it suggests—the appropriate Trematore entity to be named—would supply the missing elements of its cause of action or alter the outcome, warranting summary dismissal of its negligence claim.

## VII.

Finally, plaintiff argues the second motion judge "did not convert Trematore LLC's [m]otion to [d]ismiss to a [m]otion for [s]ummary [j]udgment until her written decision was issued on March 12, 2024" and thus "oral argument was heard without the filing of either a statement or counterstatement of material facts."

"In evaluating motions to dismiss, courts consider allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005); see also Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 412 (App. Div. 2014). "If a trial court reviewing a motion to dismiss relies on materials beyond the allegations in the complaint, the 'motion [is] treated as one

43

for summary judgment.'" Arias v. Cnty. of Bergen, 479 N.J. Super. 268, 289 (App. Div. 2024) (alteration in original) (quoting Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 337 (App. Div. 2006); see also Rule 4:6-2 ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by [Rule] 4:46")).

Plaintiff avers the second motion judge did not give it advance notice of her intention to treat the dismissal motions as summary judgment motions. See Rule 4:6-2 ("all parties shall be given reasonable notice of the court's intention to treat the motion as one for summary judgment and a reasonable opportunity to present all material pertinent to such a motion"). The transcript of the February 20, 2024 oral argument was not provided to this court, and therefore, our review of this issue is limited.

However, even accepting plaintiff's representation, we discern no reversible error. The contents of Trematore LLC's motion, which included documents that were not referenced in or attached to the complaint or were not publicly available, clearly placed plaintiff on notice that the second motion judge could convert the motions to summary judgment motions. And, contrary

to plaintiff's assertion, the alleged lack of notice did not prevent plaintiff from opposing the motions as summary judgment motions.

We conclude the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2560-23